UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>   v.<br><br>DENKEV INC., SCONTICUT NECK HOLDINGS LLC, KEVIN J. VASCONCELLOS, AMANDA PEREIRA; JANE CODERRE, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PAUL N. CODERRE, ESQ.<br><br>       Defendants. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## INTRODUCTION

Acceptance Indemnity Insurance Company ("Acceptance") issued Commercial Policy No. BND0010733 01 ("Policy") to two Massachusetts entities – DenKev Inc. ("DenKev") and Sconticutneck Holdings ("Sconticutneck") – doing business together as "Bayside Lounge." The Policy contained a General Liability Coverage Part and a Liquor Liability Coverage Part. Both Coverage Parts were subject to significant exclusions and limitations from coverage, including – among other things – a Firearms Exclusion. The Firearms Exclusion barred coverage for "'bodily injury' … [a]rising out of the use of, or failure to use, firearms … by any person on or about any premises you own, rent or occupy….".

On Friday, December 29, 2023, one of the patrons of the Lounge, Paul N. Coderre Jr. ("Coderre"), entered the Lounge with a firearm. He brandished that firearm on the Lounge's premises. He was then shot and killed by police. His spouse subsequently sued DenKev and two

of its alleged employees or supervisors, Kevin J. Vasconcellos ("Vasconcellos") and Amanda Pereira ("Pereira") (collectively, the "Underlying Defendants").  Her lawsuit, *Coderre v. City of New Bedford, et al.*, C.A. No. 2473CV00897 (Mass. Super. Ct., Bristol Cnty) (the "Underlying Action"), alleged that Mr. Coderre was overserved by the Underlying Defendants;  and that this overservice contributed, directly or indirectly, to his brandishing of the firearm and his subsequent death by shooting.

In this action, Acceptance seeks a judgment that it has no duty to defend or indemnify the Underlying Defendants with respect to Ms. Coderre's lawsuit.  Additionally, Acceptance believes the plaintiff in the Underlying Action -- Jane Coderre, individually and as Personal Representative of the Estate of Paul N. Coderre, Jr. – may have recently settled with the Underlying Defendants and taken an assignment of those Defendants' rights against Acceptance.  To the extent Ms. Coderre purports to be an assignee of the Underlying Defendants' rights, or otherwise claims an interest in the determination of coverage, Acceptance includes her as a defendant.

## THE PARTIES

1       Acceptance is a corporation organized under the laws of the State of Nebraska, with its principal place of business is in the State of North Carolina.

2.      DenKev is a Massachusetts company with a principal place of business at 125 Sconticut Neck Road, Fairhaven, Massachusetts (the "Premises").  It is a partial owner of a business at the Premises known as the "Bayside Lounge."

3.      Sconticutneck is a Massachusetts limited liability company with a principal place of business at the same Premises.   It is also a partial owner of the Bayside Lounge.

4.      The business that Sconticutneck and DenKev operate at the Premises consists of a two-story building, with bar serving food and alcoholic beverages, and a parking lot used by

patrons and employees of the bar.

5.      Upon information and belief, Mr. Vasconcellos is an individual residing in the Commonwealth of Massachusetts.   He is alleged, in the Underlying Action, to have been the manager of the Lounge on the day of Mr. Coderre's shooting.

6.      Upon information and belief, Ms. Pereira is an individual residing in the Commonwealth of Massachusetts.  She is alleged, in the Underlying Action, to have served alcoholic beverages to Mr. Coderre on the day of his shooting.

7.      Upon information and belief, Jane Coderre is an individual residing in North Dartmouth, Bristol County, Massachusetts.  She serves as Personal Representative of the Estate of her deceased husband, Mr. Coderre.

## JURISDICTION AND VENUE

8.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

9.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1332, as this is an action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), since the Underlying Action is pending in a state court within this judicial district, and a substantial part of the events giving rise to this suit occurred within this judicial district.

## FACTS

### The Coderre Shooting

11.     Mr. Coderre was a Deputy Fire Chief for the City of New Bedford, who left the force on disability in August 2020.  In mid-2021, surveillance video showed him lifting a heavy

box out of the back of his pickup truck. He was discharged by the City and publicly accused of insurance fraud, i.e., faking his injury to collect disability benefits.

12. In the years that followed, Mr. Coderre engaged in a long-running dispute as to the Town's allegations of insurance fraud. On November 30, 2023, after an adverse administrative determination, the Town indicated that it would be pursuing these allegations in Bristol Superior Court. This development reportedly caused Mr. Coderre to become "despondent" and to make "several suicidal statements."

13. On Friday, December 29, 2023, Mr. Coderre entered the Bayside Lounge with a firearm. He became intoxicated. In his intoxicated state, he was involved in an altercation with other individuals in the bar. He discharged his firearm into the air. Police, responding to a report, found Mr. Coderre in the bar's parking lot trying to access his vehicle.

14. Words were exchanged. Mr. Coderre drew a pistol from a holster. He became engaged in a gunfight with police. He again discharged his firearm, wounding an Acushnet police officer in the leg. Police returned fire, and Mr. Coderre was killed.

15. Autopsy reports show the cause of Mr. Coderre's death to have been gunshot wounds of the torso and extremities. Specifically, the autopsy revealed five gunshot wounds: a penetrating gunshot wound on Mr. Coderre's left upper back, a perforating gunshot wound on his left lower back, a penetrating gunshot wound on his left flank, a penetrating gunshot wound of the left buttock and a gunshot wound to his left arm. A Ruger LC9S semi-automatic pistol was located next to Mr. Coderre's body.

## The Subsequent Investigation

16. After Mr. Coderre's death, the Bristol District Attorney's Office conducted a detailed investigation. The investigators interviewed numerous witnesses, including Ms. Coderre.

-4-

They noted that Mr. Coderre had thirty-nine firearms registered to him, and "was known to carry a firearm at all times." Ms. Coderre confirmed that Mr. Coderre had a firearm on the afternoon in question, which he had pointed at her prior to the arrival of the police.

17.    In August 2024, the District Attorney's Office issued its detailed report of the incident. The Report described the standoff with Mr. Coderre in the parking lot, and the attempts police had made to de-escalate the situation, disarm Mr. Coderre, or subdue him by non-lethal means. The Report then described the events of Mr. Coderre's death, as follows:

> Mr. Coderre pulled a firearm from a holster on his right hip. [He] began firing the weapon directly at several police officers who had been standing by, ready to tackle Mr. Coderre when the less lethal devices were deployed. An Acushnet officer was shot in the leg. Four police officers deployed their firearms and Mr. Coderre fell in the parking lot. He had been shot five times. Medical attention was rendered to the injured officer and Mr. Coderre. The injured officer was transported to St. Luke's hospital for a minor gunshot wound. He was released the same night. Mr. Coderre was also brought to St. Luke's hospital where he was declared deceased at approximately 6:10PM.

See District Attorney's Findings and Conclusions Regarding the Police Shooting Death of Paul Coderre, Jr., in Fairhaven on December 29, 2023. A copy of the District Attorney's Report ("DA Report") is attached as Exhibit A.

**The Underlying Action**

18.    On April 24, 2025, Ms. Coderre brought the Underlying Action in Massachusetts State Superior Court, Bristol County, Massachusetts. A copy of her Complaint ("Underlying Complaint") is attached as Exhibit B.

19.    In the Underlying Complaint, Ms. Coderre alleges that Amanda Pereira – a bar employee supervised by Mr. Vasconcellos – overserved Mr. Coderre with alcoholic beverages on December 29, 2023. Ms. Coderre alleges that Mr. Coderre, "while drunk, attempted to leave

Bayside and drive home."  Before he could do so, Ms. Coderre alleges, Mr. Coderre "became involved in a gun incident," and was "shot to death" by police officers.  The death was caused by "gunshots" and occurred on Bayside's premises, i.e., its parking lot, "as [Mr. Corderre] was attempting to access his personal vehicle."

20.    In her Underlying Complaint, Ms. Coderre seeks to recover compensation from DenKev, Mr. Vasconcellos, Ms. Pereira and others for Mr. Coderre's death.  Among other things, she demands damages for pain and suffering, funeral expenses, loss of dignity, mental anguish, and serious physical and emotional harm, attorney fees and interest.

## THE POLICY

21.    Acceptance issued Commercial Policy No. BND0010733 01 (eff. 9-16-23 – 9-16-24) (the "Policy") to DenKev and Sconticutneck as Named Insureds.  A copy of the Acceptance Policy is attached as Exhibit C.

22.    Insofar as is relevant here, the Policy contains two Coverage Parts:  a General Liability Coverage Part, with limits of $1,000,000 per occurrence, and a Liquor Liability Coverage Part, with $500,000 limits.  Each of these Coverage Parts are subject to various terms, conditions, endorsements, limitations and exclusions.

### General Liability Coverage Part

23.    The Policy's General Liability Coverage Part provides, in  relevant part:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "bodily injury" or "property damage" to

> which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit that may result.

*See* Exh. C, CGL Covg. Form, Sec. I – § 1.a.   This Coverage Part defines "insured" to include DenKev and its executive officers and directors with respect to their conduct of DenKev's business.  However, employees of DenKev are not considered "insureds."  *See* Exh. C., CGL Covg. Form, Sec. I – Coverage A, § II – Who is an Insured.  As a result, there is no coverage for Mr. Vasconcellos or Ms. Pereira under this Coverage Part.

24.     The General Liability Coverage Part is also subject to various terms, conditions and exclusions.  One such exclusion is a Liquor Liability Exclusion, providing:

> This insurance does not apply to … "[b]odily injury" or "property damage" for which any insured may be held liable by reason of:  [1] causing or contributing to the intoxication of any person; [2] the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or [3] any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

*See* Exh. C, CGL Covg. Form, Sec. I – Coverage A, § 2.c (Liquor Liability Exclusion). Accordingly, the Policy's General Liability Coverage Part does not apply to the allegations of the Underlying Complaint.

25.     Additionally – and importantly – the Policy contains a Firearms And / Or Weapons Exclusion, applicable to the General Liability Coverage Part, saying:

> This insurance does not apply to "bodily injury" … [a]rising out of the use of, or failure to use, firearms and/or "weapons" by any person on or about any premises you own, rent or occupy ….

*See* Exh. C, CGL Covg. Form, Endt. PCG 14900221, Para. A.(b.)  Here, the Underlying Complaint alleges "bodily injury" arising out of the use of firearms:  namely, a "gun incident" in which Mr. Coderre brandished a weapon and was "shot to death" by police officers.  The incident took place

on DenKev's premises, i.e., the parking lot of the Bayside Lounge.  For this reason, too, the General Liability Coverage Part does not apply to the Underlying Action.

## Liquor Liability Coverage Part

26.    In addition to its General Liability Coverage Part, the Policy contains a Liquor Liability Coverage Part that provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply.

See Exh. B, Liq. Liab. Covg. Form, Sec. I – § 1.a.  This Coverage Part defines "insured" to include Denkev, Denkev's executive officers and directors (with respect to the conduct of Denkev's business), and Denkev's "'employees' … but only for acts within the scope of their employment for [Denkev] or while performing duties related to the conduct of [Denkev's] business…." See Exh. B, Liq. Liab. Covg. Form,  Sec. II – Who is an Insured.  Therefore, the question of whether Mr. Vasconcellos and Ms. Pereira are covered will turn on whether they were "performing duties related to the conduct of [Bayside's] business….".

27.    Like the General Liability Coverage Part, the Liquor Liability Coverage Part of the Policy is subject to various terms, conditions and exclusions.  These include – by way of example – an exclusion for any "injury" as to which other insurance is afforded; an exclusion for "injury" that "arise[s] out of any alcoholic beverage sold, served or furnished while any required license is not in effect," and a Mandatory Seller Training Condition, which requires that the Named Insured

and its employees successfully complete and maintain an accredited Alcohol Beverage Seller Training Program.

28.    Finally, and significantly, the Policy's Liquor Liability Coverage Part contains a Firearms And / Or Weapons Exclusion, similar to the Exclusion in the Commercial General Liability Coverage Part.  The Exclusion says:

> This insurance does not apply to "bodily injury" … [a]rising out of the use of, or failure to use, firearms and/or "weapons" by any person on or about any premises you own, rent or occupy ….

*See* Exh. C, CGL Covg. Form, Endt. PCG 14900221, Para. B.(a.).  Here, the Underlying Complaint alleges "bodily injury" arising out of the use of firearms:  namely, a "gun incident" on the Bayside premises, in which Mr. Coderre was "shot to death" by police officers.  For this reason, the Liquor Liability Coverage Part does not apply to the Underlying Action.

## **PRESENT DISPUTE**

29.    After learning of Ms. Coderre's filing of the Underlying Action, DenKev and Sconticutneck tendered that Action to Acceptance for defense.

30.    Acceptance conducted an investigation.  At the conclusion of that investigation, it determined that it owed no obligation to the Underlying Defendants in connection with the claims asserted in the Underlying Action.

31.    On or about June 19, 2025, Acceptance sent a letter to DenKev and Sconticutneck, disclaiming any obligation under the Policy.   On August 25, 2025, the Underlying Defendants sent Acceptance a letter, through counsel, advising that they disagreed with this position.

32.    On February 6, 2025, the Court recorded an Agreement for Judgment between Ms. Coderre and DenKev, in which DenKev conceded liability for the claims in the Underlying Action,

and jointly asked the court to make an assessment of damages, "capped by the insurance limited afforded by the Acceptance [Policy]."

33.    On March 19, 2025, the court recorded a Further Agreement for Judgment between Ms. Coderre and DenKev.  The Further Agreement -- which contained factual inaccuracies – stipulated that the amount of Ms. Coderre's damages was $1.5 million, plus statutory interest and costs.

34.    On information and belief, the Underlying Defendants, or some of them, have entered into an assignment or transfer of policy rights, which purports to give Ms. Coderre an interest in the proceeds of the Policy.

35.    Acceptance now brings this action to obtain a judicial declaration that the Policy provides no defense or indemnity obligations to the Underlying Defendants, or to Ms. Coderre as their purported assignee, in connection with the Underlying Action.

**COUNT I**
**DECLARATORY JUDGMENT**
**(General Liability Coverage Part)**

36.    Acceptance incorporates and re-alleges the allegations of Paragraphs 1 - 35 as if fully set forth herein.

37.    There exists an actual and justiciable controversy between Acceptance and Defendants as to whether the General Liability Coverage Part requires Acceptance to cover the matters alleged in the Underlying Action.  This controversy is substantial and immediate and justifies a grant of declaratory relief under 18 U.S.C. Section 2201(a), the Federal Declaratory Judgment Act.

38.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Acceptance is entitled to a determination concerning the parties' rights and obligations, if any.

## COUNT II
## DECLARATORY JUDGMENT
## (Liquor Liability Coverage Part)

39.     Acceptance incorporates and re-alleges the allegations of Paragraphs 1 - 38 as if fully set forth herein.

40.     There exists an actual and justiciable controversy between Acceptance and Defendants as to whether the Liquor Liability Coverage Part requires Acceptance to cover the matters alleged in the Underlying Action.  This controversy is substantial and immediate and justifies a grant of declaratory relief under 18 U.S.C. Section 2201(a), the Federal Declaratory Judgment Act.

41.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Acceptance is entitled to a determination concerning the parties' rights and obligations, if any.

### REQUEST FOR RELIEF

WHEREFORE, Acceptance prays that the Court:

A.     Declare that Mr. Vasconcellos is not an insured under the General Liability Coverage Part, for purposes of determining Acceptance's indemnification and defense obligations under the Policy with respect to the Underlying Action;

B.     Declare the Policy's Liquor Liability Exclusion applies to bar coverage under the General Liability Coverage of the Policy for any claim in the Underlying Action against Bayside, Vasconcellos, and Pereira arising out of the death of Mr. Coderre.

C.     Declare the Policy's Firearms and/or Weapons Exclusion applies to bar coverage under the Commercial General Liability Coverage of the Policy

for any claim in the Underlying Action against Bayside, Vasconcellos, and Pereira arising out of the death of Mr. Coderre.

D.     Declare the Policy's Firearms and/or Weapons Exclusion applies to bar coverage under the Liquor Liability Coverage of the Policy for any claim in the Underlying Action against Bayside, Vasconcellos, and Pereira arising out of the death of Mr. Coderre.

E.     Award such other and further relief as is proper.

Dated:  March 25, 2026

ACCEPTANCE INDEMNITY
INSURANCE COMPANY,

By its attorneys,


*/s/ Eric Hermanson*
Eric Hermanson, Esq. (BBO# 560256)
Brandon R. Dillman, Esq. (BBO# 696937)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston, MA 02110
Tel: (617) 748-5200
hermansone@whiteandwilliams.com
dillmanb@whiteandwilliams.com